**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Century Mining, LLC d/b/a Allegheny | § | |
| Metallurgical, | § | Case No. 24-00598 (DLB) |
| | § | |
| Debtor. | § | |

---

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED JANUARY 16, 2025
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE CO-SPONSORED BY THE DEBTOR
AND THE DIP LENDERS**

---

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED JANUARY 16, 2025 UNDER CHAPTER 11 OF THE BANKRUPTCY CODE CO-SPONSORED BY THE DEBTOR AND THE DIP LENDERS**

Century Mining, LLC ("Debtor"), debtor-in-possession in the above-captioned Chapter 11 Case, and White Knight Specialty Funding II LLC and ITC-NCR, LLC, the Debtor's post-petition lenders (the "DIP Lenders") hereby propose this joint plan of reorganization for the resolution of outstanding claims against and equity interests in the Debtor. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtor's history, business, historical financial information, valuation, liquidation analysis, projections, and operations as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.**

**ARTICLE I**

**DEFINED TERMS AND RULES OF INTERPRETATION**

*A.    Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

"*Accrued Professional Compensation Claim*" means, at any date, a Claim for all accrued fees and reimbursable expenses for services rendered by a Retained Professional in the Chapter 11 Case through and including such date, to the extent that such fees and expenses have not been previously paid whether under a retention order with respect to such Retained Professional or otherwise. To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered an Accrued Professional Compensation Claim.

"*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Accrued Professional Compensation Claims and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred on or after the Petition Date and through the Effective Date; and (c) all fees and charges assessed against the Estate under section 1930, chapter 123, of title 28, United States Code.

"*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

"*Allowed*" means, with respect to any Claim, an Allowed Claim in a particular Class or category specified. Any reference herein to the allowance of a particular Allowed Claim includes both the secured and unsecured portions of such Claim (unless the context indicates to the contrary).

"*Allowed _____ Claim*" means an Allowed Claim of the type described.

"*Allowed Claim*" means any Claim that is not a Disputed Claim or a Disallowed Claim and (a) for which a Proof of Claim has been timely Filed by the applicable Claims Bar Date and as to which no objection to allowance thereof has been timely interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court; (b) that has been listed by the Debtor in its Schedules as liquidated in a specified amount and is not disputed or contingent and for which no contrary Proof of Claim has been timely Filed; or (c) that is expressly Allowed under the terms of this Plan or a Final Order of the Bankruptcy Court. The term "Allowed Claim" shall not, for purposes of computing distributions under this Plan, include interest, fees (including attorneys' fees), costs or charges on such Claim from and after the Petition Date, except as provided in sections 506(b) or 511 of the Bankruptcy Code or as otherwise expressly set forth in this Plan or a Final Order of the Bankruptcy Court.

"*Assignment Agreement*" means that certain Assignment Agreement dated December 23, 2024 by and between White Knight II and INL, which provides for the assignment by White Knight II of a twenty-five percent (25%) interest in the DIP Commitment and Loans (each as defined in the Final DIP Order) in a maximum aggregate principal amount not to exceed $27,500,000.00 exclusive of capitalized fees and costs.

"*Avoidance Actions*" means any and all avoidance, recovery, subordination or similar actions or remedies that may be brought by and on behalf of the Debtor or the Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under chapter 5 of the Bankruptcy Code.

"*Backstop Parties*" means the DIP Lenders.

"*Ballot*" means the ballot for the Holder of the Existing Equity Interests in Class 5 accompanying the Disclosure Statement and approved by the Disclosure Statement Order.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of West Virginia, or any other court having jurisdiction over the Chapter 11 Case.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules, in each case as amended from time to time and as applicable to the Chapter 11 Case.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Carve Out Account*" shall have the meaning given to it in the Final DIP Order.

"*Carve Out Cap*" shall have the meaning given to it in the Final DIP Order.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or under any other

theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date now owned or hereafter acquired by the Debtor and/or the Estate.

"*Chapter 11 Case*" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

"*Claim*" is as defined in section 101(5) of the Bankruptcy Code.

"*Claims Bar Date*" means the last date for filing a Proof of Claim in this Chapter 11 Case, as provided in the Claims Bar Date Order.

"*Claims Bar Date Order*" means an order of the Bankruptcy Court establishing the bar date and related procedures for filing proofs of claim against the Debtor, and approving the form and manner of notice thereof, as such order may be amended, amended and restated, supplemented or otherwise modified from time to time.

"*Claims Register*" means the official register of Claims maintained by the Debtor and/or the clerk of the Bankruptcy Court.

"*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof under section 1122(a) of the Bankruptcy Code.

"*Collateral*" means any property or interest in property of the Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

"*Committee*" means the official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Case under section 1102 of the Bankruptcy Code on December 10, 2024, as may be reconstituted from time to time.

"*Confirmation*" means the occurrence of the Confirmation Date, subject to all conditions specified in Article VIII of this Plan having been satisfied or waived.

"*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court in the Chapter 11 Case.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance acceptable to each of the Plan Sponsors.

"*Consummation*" means the occurrence of the Effective Date.

"*Cure Amount*" has the meaning set forth in Article V.B hereof.

"*Debtor Release*" has the meaning set forth in Article IX.B hereof.

"*DIP Credit Agreement*" means that certain Post-Petition Loan and Security Agreement dated as of November 27, 2024, by and between Century Mining, LLC, as borrower, and White Knight II, as lender.

"*DIP Claims*" means all Claims against the Debtor arising pursuant to the DIP Documents, including all DIP Obligations.

"*DIP Documents*" means all Loan Documents (as such term is defined in the DIP Credit Agreement).

"*DIP Lenders*" means, collectively, White Knight II and INL.

"*DIP Obligations*" means all Obligations (as such term is defined in the DIP Credit Agreement).

"*Disallowed Claim*" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as contingent, disputed or unliquidated and (ii) as to which the Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disclosure Statement*" means that certain *First Amended Disclosure Statement for the Debtor's Plan of Reorganization Dated January 16, 2025 Under Chapter 11 of the Bankruptcy Code Co-Sponsored by the Debtor and the DIP Lenders* (as amended, amended and restated, supplemented or otherwise modified from time to time).

"*Disclosure Statement Order*" means an order entered by the Bankruptcy Court approving the Disclosure Statement on a conditional basis, approving the timeline for Confirmation and the solicitation and voting forms and procedures, approving the Rights Offering Procedures and related offering form, and scheduling the Confirmation Hearing, in form and substance acceptable to each of the Plan Sponsors.

"*Disputed Claim*" means any Claim, or any portion thereof, that is not a Disallowed Claim, that has not been Allowed under this Plan or by a Final Order of the Bankruptcy Court, and

(a)    if a Proof of Claim has been timely Filed by the applicable Claims Bar Date, such Claim is designated on such Proof of Claim as unliquidated, contingent or disputed, or in zero or unknown amount, and has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; or

(b)    if either (1) a Proof of Claim has been timely Filed by the applicable Claims Bar Date or (2) a Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, or in zero or unknown amount, a Claim (i) as to which the Debtor has timely filed an objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court or for which such time period to object or file a request for estimation has not yet expired as of the applicable date of determination or (ii) which is otherwise disputed by the Debtor in accordance with applicable law, in each case which objection, request for estimation or dispute has not been withdrawn, overruled or determined by a Final Order; or

(c)    that is the subject of an objection or request for estimation Filed in the Bankruptcy Court and which such objection or request for estimation has not been withdrawn, resolved or overruled by Final Order of the Bankruptcy Court; or

(d)    that is otherwise disputed by the Debtor in accordance with the provisions of this Plan or applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

"*Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when, subject to the "Treatment" sections in Article III hereof, distributions under this Plan shall commence to Holders of Allowed Claims.

"*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Effective Date.

"*Effective Date*" means the first Business Day on which the conditions specified in Article VIII of this Plan have been satisfied or waived in accordance with the terms of Article VIII.

"*Eligible Offeree*" means NCR.

"*Entity*" is as defined in section 101(15) of the Bankruptcy Code.

"*Equipment Leases*" means any and all equipment leases and associated lease schedules by and between the Debtor and any of the Equipment Lienholders.

"*Equipment Lienholders*" means Caterpillar Financial Services Corporation and VFI KR SPE 1 LLC.

"*Equipment Lienholder Claims*" means any Claims of any Equipment Lienholder against the Debtor arising under any of the Equipment Leases.

"*Equity Commitment Agreement*" means that certain agreement by and among the Debtor and the Backstop Parties, to be filed as part of the Plan Supplement, and which shall provide for a full backstop of the Rights Offering up to the amount of the New Equity Investment.

"*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding units and other ownership interests, including limited liability company interests, together with (a) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to the Debtor, and all rights arising with respect thereto and (b) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include: (i) conversion, exchange, voting, participation, dividend and distribution rights; (ii) liquidation preferences; (iii) options, warrants, and call and put rights; (iv) share-appreciation rights; and (v) all unexercised Equity Interests.

"*Equity Security*" is as defined in section 101(16) of the Bankruptcy Code.

"*Estate*" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

"*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq*., as now in effect or hereafter amended, and any similar federal, state or local law.

"*Exculpated Parties*" means, collectively, and in each case in their capacity as such: (i) the Debtor and the Reorganized Debtor; (ii) the Committee and the members thereof, solely in such capacity; (iii) the DIP Lenders; (iv) the Special Receiver; and (v) with respect to each of the foregoing Entities, each of their respective Related Persons that served in such capacity.

"*Exculpation*" means the exculpation provision set forth in <u>Article IX.D</u> hereof.

"*Executory Contract*" means all contracts and leases to which the Debtor is a party and that are subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Existing Equity Interests*" means the Equity Interests in the Debtor held by NCR immediately prior to the Effective Date.

"*Existing Equity Interest Holder*" means NCR.

"*Exit Facility*" means the new senior secured credit facility between the Debtor and the Exit Facility Lender, which will have the terms set forth in the Exit Facility Documents.

"*Exit Facility Documents*" means any documentation necessary to effectuate the incurrence of the Exit Facility.

"*Exit Facility Lender*" means one or more lenders, acceptable to the Plan Sponsors, under the Exit Facility Documents.

"*Face Amount*" means (a) when used in reference to a Disputed Claim, the full stated amount of the Claim asserted by the applicable Holder in any Proof of Claim timely Filed with the Bankruptcy Court and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"*Final DIP Order*" means the *Final Order (I) Authorizing the Debtor to Obtain Postpetition Secured Financing; (II) Authorizing the Debtor's Use of Cash Collateral; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Authorizing the Debtor to Issue Purchase Order Related to the HBT Equipment; and (V) Granting Related Relief,* entered by the Bankruptcy Court on December 20, 2024 at Docket No. 239.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"*General Administrative Claim*" means any Administrative Claim, other than an Accrued Professional Compensation Claim, any DIP Claims, and Claims for fees and expenses under 28 U.S.C § 1930(a).

"*General Unsecured Claim*" means any unsecured claim that is not a/an: Administrative Claim, Accrued Professional Compensation Claim, Priority Tax Claim, Other Priority Claim, DIP Claim, ION Claim, Prepetition Working Capital Lender Claim, or Equipment Lienholder Claim.

"*Governmental Unit*" is as defined in section 101(27) of the Bankruptcy Code.

"*Holder*" means an Entity holding a Claim or Equity Interest.

"*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*INL*" means ITC-NCR, LLC.

"*Insurance Policies*" means the insurance policies issued to or for the benefit of the Debtor or any of its predecessors-in-interest and any agreements, documents or instruments related thereto.

"*Interim DIP Order*" means that certain *Interim Order (I) Authorizing the Debtor to Obtain Postpetition Secured Financing; (II) Authorizing the Debtor's Use of Cash Collateral; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Authorizing the Debtor to Issue Purchase Order Relating to the HBT Equipment; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief*, Filed at Docket No. 89.

"*ION*" means ION Carbon & Minerals, LLC.

"*ION Claims*" means the Claims against the Debtor held by ION under the ION Agreements.

"*ION Agreements*" means that certain *Amended and Restated Contract for the Sale and Purchase of Coal*, dated April 19, 2024, that certain *Third Amended and Restated Coal Delivery Service Agreement*, dated April 30, 2024, and any other agreement between ION and the Debtor, each as amended and as may be further amended or modified from time to time.

"*IRS*" means the Internal Revenue Service of the United States of America.

"*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any property or asset, includes, without limitation, any mortgage, deed of trust, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such property or asset.

"*Local Rules*" means the United States Bankruptcy Court for the Northern District of West Virginia Local Rules, or the local rules of any other court having jurisdiction over the Chapter 11 Case.

"*Mine*" means that certain metallurgical coal mine operated by the Debtor in and across Barbour, Harrison, and Upshur Counties, West Virginia known as the "Longview Mine," and which commonly does business as and is referred to as the "Allegheny Metallurgical Mine."

"*NCR*" means North Central Resources, LLC, a West Virginia limited liability company.

"*NCR Lease*" means that certain Lease and Sublease, dated as of January 15, 2019, by and between North Central Resources, LLC and Century Mining, LLC (as amended on January 20, 2021).

"*NCR Lease Amendment*" means an amendment to the NCR Lease in substantially the form included with the Plan Supplement, to be entered into by and among NCR and Century Mining, LLC,

which will amend Section 4(B) of the NCR Lease to replace all references therein to "two percent" and/or "2.0%" with "four percent" and "4.0%," respectively; provided, however, that the NCR Lease Amendment will only be executed by the Debtor if NCR (in its capacity as Existing Equity Interest Holder) votes to accept the Plan.

"*New Equity Interests*" means the equity interests in the Reorganized Debtor, referred to in the New Operating Agreement as "Class A Units," to be authorized, issued, and/or reserved on the Effective Date under the Plan.

"*New Equity Documents*" means the New Operating Agreement and any other governance documents for the Reorganized Debtor.

"*New Equity Investment*" means $150 million, raised pursuant to the Rights Offering which, if funded by the Backstop Parties, may include the conversion of DIP Claims and/or any amounts due under the Equity Commitment Agreement.

"*New Operating Agreement*" means the operating agreement to be executed by and among the Reorganized Debtor, NCR and the Holders of the New Equity Interests, in substantially the form included in the Plan Supplement, and which will prohibit the issuance of non-voting Equity Securities in accordance with section 1123(a)(6) of the Bankruptcy Code.

"*Notice*" has the meaning set forth in Article XII.J of this Plan.

"*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

"*Petition Date*" means November 22, 2024, the date on which the Debtor commenced the Chapter 11 Case.

"*Plan*" means this *Debtor's First Amended Plan of Reorganization Dated January 16, 2025 Under Chapter 11 of the Bankruptcy Code Co-Sponsored By The Debtor and the DIP Lenders*, sponsored by the Plan Sponsors, and including the Plan Supplement, Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Distribution*" means the payment or distribution of consideration to holders of Allowed Claims or Equity Interests under this Plan.

"*Plan Schedule*" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, supplemented or otherwise modified from time to time), which shall be deemed to include any documents filed as part of the Plan Supplement.

"*Plan Sponsors*" mean each of the Debtor, INL and White Knight II.

"*Plan Supplement*" means, collectively, the compilation of documents, forms of documents and/or term sheets relevant to the implementation of the Plan, and all exhibits, attachments, schedules,

agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, to be Filed with the Bankruptcy Court at least five (5) days prior to the deadline established by the Bankruptcy Court to object to Confirmation, all of which are incorporated by reference into, and are an integral part of, this Plan.

"*Prepetition Working Capital Lenders*" means White Knight I, INL, and POSCO NCR Coal Ltd., in their respective capacities as lenders under the Prepetition Credit Agreement.

"*Prepetition Working Capital Lender Claims*" means any Claim against the Debtor arising under the Prepetition Credit Agreement.

"*Prepetition Credit Agreement*" means that certain Credit Agreement dated as of October 18, 2024 by and among Century Mining, LLC, as borrower, and the Prepetition Working Capital Lenders, as lenders.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

"*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Equity Interests, that the Claim or Equity Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

"*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date, and any Person claiming by or through any of them, including such Related Persons' respective heirs, executors, estates, servants, and nominees; *provided*, *however*, that no insurer of the Debtor shall constitute a Related Person of the Debtor or Reorganized Debtor.

"*Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article IX.B hereof.

"*Released Party*" means, collectively, the following, in each case in their capacity as such: (i) the Debtor; (ii) the Reorganized Debtor; (iii) the DIP Lenders; and (iv) the Prepetition Working Capital Lenders and (v) with respect to each of the parties referenced in (i), (ii), (iii), and/or (iv), the respective Related Persons of each of the foregoing Entities.

"*Releasing Party*" has the meaning set forth in Article IX.B hereof.

"*Reorganized Debtor*" means, subject to the Restructuring Transactions, the Debtor as reorganized under this Plan on or after the Effective Date, and its successors.

"*Restructuring Documents*" means, collectively, the documents and agreements (and the exhibits, schedules, annexes and supplements thereto) necessary to implement, or entered into in connection with,

this Plan, which may include, without limitation, the Plan Supplement, the Exhibits, the Plan Schedules, the Exit Facility Documents, the Equity Commitment Agreement, and the New Operating Agreement.

"*Restructuring Transactions*" means those transactions described in <u>Article IV.B</u> of this Plan.

"*Retained Professional*" means any Entity: (a) employed in the Chapter 11 Case under a Final Order in accordance with section 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code (other than an ordinary course professional retained under an order of the Bankruptcy Court); or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court under section 503(b)(4) of the Bankruptcy Code.

"*Rights Offering*" means that certain offering under which the Eligible Offeree is entitled to purchase New Equity Interests in exchange for the New Equity Investment, which Rights Offering shall be fully backstopped by the Backstop Parties.

"*Rights Offering Procedures*" means the procedures for the implementation of the Rights Offering, as approved by the Bankruptcy Court in the Disclosure Statement Order.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts, and statement of financial affairs Filed by the Debtor under section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means a Claim that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined under section 506(a) of the Bankruptcy Code or, in the case of setoff, under section 553 of the Bankruptcy Code.

"*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Special Receiver*" means G. Nicholas Casey, in his capacity as Special Receiver for North Central Resources, LLC, as appointed by order of the Circuit Court of Barbour County, West Virginia dated November 14, 2024 in Civil Action No. CC-01-2024-C-47.

"*Stamp or Similar Tax*" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes or fees imposed or assessed by any Governmental Unit.

"*Subordinated Claim*" means any Claim that is subject to (i) subordination under section 510(b) of the Bankruptcy Code or (ii) equitable subordination as determined by the Bankruptcy Court in a Final Order, including, without limitation, any Claim for or arising from the rescission of a purchase, sale, issuance, or offer of a security of any Debtor; for damages arising from the purchase or sale of such a

10

security; or for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

"*United States Trustee*" means the office of the United States Trustee for the District of West Virginia.

"*Voting Class*" means Class 5.

"*Voting Deadline*" means the deadline established by the Bankruptcy Court by which Ballots accepting or rejecting the Plan must be received by the Debtor.

"*White Knight I*" means White Knight Specialty Funding LLC.

"*White Knight II*" means White Knight Specialty Funding II LLC.

B.    *Rules of Interpretation*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of this Plan; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including" and variations thereof shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (g) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Equity Interests," "Disputed Interests," and the like, as applicable; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (i) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (k) any effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control.

2.    All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

3.      Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

C.      *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

D.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control. In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, UNITED STATES TRUSTEE STATUTORY FEES AND OTHER PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Claims, Priority Tax Claims, United States Trustee statutory fees, and Other Priority Claims have not been classified and, thus, are excluded from the Classes of Claims and Equity Interests set forth in Article III of this Plan.

A.      *Administrative Claims*

1.      <u>General Administrative Claims</u>

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code and except to the extent that a Holder of an Allowed General Administrative Claim and the Debtor before the Effective Date (or the Reorganized Debtor after the Effective Date) agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash: (a) if such Allowed General Administrative Claim is based on liabilities that the Debtor incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such Allowed General Administrative Claim; (b) if such Allowed General Administrative Claim is due, on the Effective Date, or, to the extent such Allowed General Administrative Claim or any portion thereof is not due as of the Effective Date, on the date that such Allowed General Administrative Claim or portion thereof becomes due or as soon as reasonably practicable thereafter; (c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than sixty (60) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of the Bankruptcy Court or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

2.    <u>Accrued Professional Compensation Claims</u>

a.    Final Fee Applications

All final requests for Accrued Professional Compensation Claims shall be filed no later than thirty (30) days after the Effective Date and will be subject to the authorization and approval of the Bankruptcy Court.  Any objections to such applications shall be filed no later than fourteen (14) days following the date on which a final fee application is filed with the Bankruptcy Court. Subject to the Carve Out Cap, the amount of Accrued Professional Compensation Claims owed to the Retained Professionals shall be paid in Cash to such Retained Professionals from funds held in the applicable Carve Out Account after such Claims are Allowed by a Final Order. To the extent that funds held in a Carve Out Account are unable to satisfy the amount of Accrued Professional Compensation Claims owed to the applicable Retained Professionals, such Retained Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of this Plan.

b.    Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. The Reorganized Debtor may employ and pay any fees and expenses of any professional, including any Retained Professional, in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    <u>DIP Claims</u>

All DIP Obligations payable under the DIP Documents and all other DIP Claims are (a) Allowed in full; (b) shall not be subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether contractual, equitable, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under any applicable law or regulation by any person or entity; and (c) shall constitute Allowed Administrative Claims with priority over all costs and expenses of administration of the Chapter 11 Case to the extent set forth in the Final DIP Order.

At the election of each of the DIP Lenders, (x) the DIP Claims shall be paid in full, in Cash, on the Effective Date, or (y) the DIP Lenders who are Backstop Parties may convert the DIP Claims into New Equity Interests on a dollar-for-dollar basis in connection with the Rights Offering.

B.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall be treated under section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

C.    *United States Trustee Statutory Fees*

The Debtor and the Reorganized Debtor, as applicable, will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interests payable to the United States Trustee, for each

quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

D.       *Other Priority Claims*

Subject to Article VIII hereof, on, or as soon as reasonably practicable after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Debtor: (A) Cash equal to the amount of such Allowed Other Priority Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Other Priority Claim shall have agreed upon in writing; or (C) such other treatment such that it will not be impaired under section 1124 of the Bankruptcy Code; *provided*, *however*, that Other Priority Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.       *Summary*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or an Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Summary of Classification and Treatment of Claims and Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Prepetition Working Capital Lender Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | ION Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Equipment Lienholder Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | Existing Equity Interests | Impaired | Entitled to Vote |

B.    *Classification and Treatment of Claims and Equity Interests*

    1.    <u>Class 1 – Prepetition Working Capital Lender Claims</u>

        (a)    *Classification*: Class 1 consists of the Prepetition Working Capital Lender Claims.

        (b)    *Allowance:*  On the Effective Date, the Prepetition Working Capital Lender Claims shall be deemed Allowed in the aggregate principal amount of not less than Twenty Million Dollars ($20,000,000) plus all interest, fees, expenses, costs, and other charges payable with respect to the Prepetition Credit Agreement whether accruing before, on, or after the Petition Date.

        (b)    *Treatment*: Except to the extent that any of the Prepetition Working Capital Lenders agrees to less favorable treatment, each Prepetition Working Capital Lender shall receive the following, at their election:

            (i)    payment in full, in Cash, on the Effective Date; or

            (ii)    Reinstatement of its Prepetition Working Capital Lender Claim.

        (c)    *Voting*: Class 1 is Unimpaired, and the Prepetition Working Capital Lenders are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, the Prepetition Working Capital Lenders are not entitled to vote to accept or reject the Plan.

    2.    <u>Class 2 – ION Claims</u>

        (a)    *Classification*: Class 2 consists of the ION Claims.

        (b)    *Allowance*: On the Effective Date, the ION Claims shall be deemed Allowed in the aggregate amount of at least Seven Million Seven Hundred Seventy-Four Thousand One Hundred Seven and 71/100 ($7,774,107.71), *minus* the ION Adequate Protection Payment (as defined in the Final DIP Order) and any other post-petition payments made against such ION Claims.

        (c)    *Treatment*: ION shall receive payment in full, in Cash, on the Effective Date, and all ION Agreements shall be assumed pursuant to section 365 of the Bankruptcy Code as of the Effective Date.

        (d)    *Voting*: Class 2 is Unimpaired, and ION is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, ION is not entitled to vote to accept or reject the Plan.

    3.    <u>Class 3 – Equipment Lienholder Claims</u>

        (a)    *Classification*: Class 3 consists of the Equipment Lienholder Claims.

        (b)    *Treatment*: The Equipment Lienholder Claims shall be reinstated as of the Effective Date and all Equipment Leases shall be assumed pursuant to section 365 of the Bankruptcy Code as of the Effective Date.

(c)     *Voting*: Class 3 is Unimpaired, and the Equipment Lienholders are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, the Equipment Lienholders are not entitled to vote to accept or reject the Plan.

4.     Class 4 – General Unsecured Claims

(a)     *Classification*: Class 4 consists of the General Unsecured Claims.

(b)     *Allowance*: The allowance of all General Unsecured Claims shall subject to section 502 of the Bankruptcy Code and the objection and resolution process set forth in Article VIII hereof.

(c)     *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive payment in full, in Cash, on the Effective Date, to the extent such Allowed General Unsecured Claim is due and payable as of the Effective Date.  All Allowed General Unsecured Claims not yet due and payable as of the Effective Date shall be reinstated and paid in full in the ordinary course of business. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or Confirmation Order, nothing in the Plan, the Plan Supplement, or Confirmation Order shall amend, alter, modify, or otherwise impair the legal, equitable, and contractual rights to which such general unsecured claim entitles the holder of such general unsecured claim.

(d)     *Voting*: Class 4 is Unimpaired, and Holders of Class 4 General Unsecured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.     Class 5 – Existing Equity Interests

(a)     *Classification*: Class 5 consists of Existing Equity Interests.

(b)     *Treatment*: The Existing Equity Interests shall be retained by the Existing Equity Interest Holder, but shall be converted to non-voting, Class B Equity Interests in connection with the New Operating Agreement.  The Class B Equity Interests, after giving effect to the Rights Offering, shall constitute ten percent (10%) of the pro forma equity in the Reorganized Debtor.

On the Effective Date, in connection with the Rights Offering, the Existing Equity Interest Holder, as the Eligible Offeree, shall have the exclusive, non-transferable right to acquire 100% but not less than 100% of the New Equity Interests in exchange for the New Equity Investment.

In addition to the foregoing, if the Existing Equity Interest Holder votes its Class 5 Interests to accept the Plan, the Debtor will execute the NCR Lease Amendment prior to the Effective Date and the Reorganized Debtor will assume the NCR Lease under the Plan in accordance with section 365 of the Bankruptcy Code, effective as of the Effective Date, as amended by the NCR Lease Amendment.  If the Existing Equity Interest Holder does not vote to accept the Plan, the Debtor will not execute the NCR Lease Amendment and the

Reorganized Debtor will assume the NCR Lease as of the Effective Date, as-is, pursuant to section 365 of the Bankruptcy Code.

    (c)    *Voting*: Class 5 is Impaired and is entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under this Plan shall affect or limit the Debtor's or the Reorganized Debtor's rights and defenses (whether legal or equitable) in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Voting Class; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Equity Interests eligible to vote, and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims or Equity Interests in such Class.

E.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Equity Interests or any Class thereof is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

F.    *Confirmation Under Section 1129(b) of the Bankruptcy Code*

The Debtor shall seek Confirmation under section 1129(b) of the Bankruptcy Code in the event that the Existing Equity Interest Holder in Class 5 votes to reject the Plan.

G.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Under section 510 of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests*

Under section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Plan Distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies relating to the rights that a holder of a Claim or Equity Interest may have with respect to such Claim or Equity Interest or any Plan Distribution on account thereof, including (i) the value of the Debtor's encumbered

and unencumbered assets; (ii) the allocation of distributable value among the creditor classes; and (iii) the total enterprise value of the Debtor. In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtor reserves all of its rights with respect to any and all disputes resolved and settled under the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each of the compromises and settlements embodied in the Plan, and the Bankruptcy Court's finding that all such compromises or settlements were agreed upon in good faith and are: (i) in the best interests of the Debtor, the Estate, the Reorganized Debtor, and their respective property and stakeholders; and (ii) fair, equitable and within the range of reasonableness. The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent.

B.    *Restructuring Transactions*

1.    Restructuring Transactions

On the Effective Date, the Debtor, the Reorganized Debtor, or any other entities may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities under applicable law; and (d) all other actions that the Debtor or the Reorganized Debtor, as applicable, determine are necessary or appropriate.

The Confirmation Order shall and shall be deemed to, under both section 1123 and section 363 of the Bankruptcy Code along with any other applicable provision of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

2.    Exit Facility

On the Effective Date, the Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of either the Reorganized Debtor or the Debtor, as applicable, and following the consummation of the Restructuring Transactions, the Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms. The financial accommodations to be extended under the Exit Facility Documents are being extended and shall be deemed to have been extended in good faith and for legitimate business purposes and are reasonable and shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Debtor, the Reorganized Debtor, as applicable, the applicable agent, or any of the applicable lenders), having the priority set forth in the Exit Facility Documents and subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential

transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtor, the Reorganized Debtor, as applicable, and the Entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

3.    <u>New Equity Interests</u>

On the Effective Date, the Reorganized Debtor shall issue or reserve for issuance all of the New Equity Interests issued or issuable in accordance with the terms of this Plan, subject to dilution on the terms described herein. The issuance of the New Equity Interests for distribution under the Plan is authorized without the need for further corporate action, and all of the units of New Equity Interests issued or issuable under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

4.    <u>Rights Offering</u>

Following the Bankruptcy Court's approval of the Rights Offering Procedures, the Debtor shall consummate the Rights Offering in accordance therewith. Following such approval, the Rights Offering shall be conducted, and the New Equity Interests shall be issued pursuant to the Rights Offering Procedures. The consummation of the Rights Offering is conditioned on approval of the Rights Offering Procedures, the funding of the New Equity Investment, and consummation of the Plan.

C.    *New Operating Agreement; Management of the Reorganized Debtor*

On the Effective Date, the Reorganized Debtor, NCR, and the Holders of the New Equity Interests shall enter into the New Operating Agreement in substantially the form included in the Plan Supplement. The New Operating Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms.  Under section 1123(a)(6) of the Bankruptcy Code, the New Operating Agreement will prohibit the issuance of non-voting Equity Securities.

The New Operating Agreement shall provide, among other things, for the conversion of all Existing Equity Interests held by NCR in the Debtor into non-voting, Class B Units in the Reorganized Debtor, and for the Reorganized Debtor to be managed by a board of managers to be established by the Holders of the New Equity Interests.

D.    *Continued Corporate Existence*

Except as otherwise provided in the Plan, the Debtor shall continue to exist as of the Effective Date as a separate limited liability company, with all the powers of a limited liability company under applicable West Virginia law.

E.    *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor under the Plan shall vest in the Reorganized Debtor, free and clear of all

Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, no Liens will be divested that (i) secure any Claims to be reinstated under this Plan or (ii) are protective in nature and reflect ownership of such Lien holder in property held by the Debtor.

F.    *Cancellation of Agreements, Security Interests, and Other Interests*

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates, and other documents evidencing the Prepetition Working Capital Lender Claims (to the extent such Claims are paid in full pursuant to the Plan) shall be cancelled and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto shall be discharged. In respect of the Prepetition Working Capital Lender Claims, to the extent such Claims are paid in full pursuant to the Plan, the commitments and obligations (if any) to extend any further or future credit or financial accommodations under the Prepetition Credit Agreement to the Debtor, and all security interests and/or Liens granted to the Prepetition Working Capital Lenders under the Prepetition Credit Agreement and any ancillary agreements thereto shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date; *provided* that, notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of any Holder of a Prepetition Working Capital Lender Claim shall continue in effect solely for purposes of allowing Holders of such Allowed Claims to receive distributions under the Plan.

G.    *Exemption from Registration Requirements*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities pursuant to and under the Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. The New Equity Interests to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) subject to the terms of the New Operating Agreement, are freely tradeable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtor as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within ninety (90) days of such transfer, and (iii) is not an Entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

H.    *Exemption from Certain Transfer Taxes and Recording Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any Entity under, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment,

and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

I.    *Insurance Policies*

On the Effective Date, the Debtor's insurance policies in existence as of the Effective Date shall be Reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor under section 365 of the Bankruptcy Code and Article V of this Plan. Nothing in the Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the insurance policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtor shall retain all rights and defenses under such insurance policies. The insurance policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date.

J.    *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code but subject to the releases set forth in Article IX of this Plan, all Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. **Subject to the releases set forth in Article IX of this Plan, no Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date**.

K.    *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other Entity, including: (1) assumption of Executory Contracts and Unexpired Leases; (2) the execution of and entry into the Exit Facility Documents and the New Equity Documents; (3) the issuance and distribution of the New Equity Interests as provided herein; and (4) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the company structure of the Debtor and any company action required by the Debtor in connection therewith shall be deemed to have occurred on and shall be in effect as of the Effective Date without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as applicable, including (1) the Exit Facility Documents and the New Equity Documents and (2) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

L.      *Effectuating Documents; Further Transactions*

Prior to, on, and after the Effective Date, the Debtor and Reorganized Debtor and the managers, officers, and other authorized persons thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the Exit Facility Documents and the New Equity Documents, and any securities issued under the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions, or consents except for those expressly required under the Plan. All counterparties to any documents described in this paragraph are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Court.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, further Order of Court, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed without the need for any further notice to or action, order, or approval of the Bankruptcy Court as of the Effective Date under section 365 of the Bankruptcy Code.

Entry of the Confirmation Order shall constitute a Bankruptcy Court Final Order approving the assumption or assumption and assignment, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, under sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, the assumption or assumption and assignment of Executory Contracts and Unexpired Leases under the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed under the Plan or a Bankruptcy Court Final Order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified in the Plan or any Final Order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned under the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.      *Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. The amount necessary to cure any default under an Executory Contract or Unexpired Lease (the "Cure Amount") shall be the amount, if any, set forth in the Debtor's Schedules as owing to the non-Debtor counterparty to such Executory Contract or Unexpired Lease, unless a Proof of Claim is filed by the non-Debtor counterparty prior to the Claims Bar Date established in the Chapter 11 Case, in which case the Proof of Claim amount shall constitute the Cure Amount, subject to the Debtor's right to object to such Proof of Claim.  In the event of a dispute regarding (1) the Cure Amount as set forth on a Proof of Claim, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Bankruptcy Court shall hear such dispute prior to the assumption becoming effective. The payment of a disputed Cure Amount shall be made following the entry of a Final Order or orders resolving such dispute and approving the assumption, and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease under the Plan or otherwise and payment of the applicable Cure Amount shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any proof of claim filed with respect to an Executory Contract or Unexpired Lease that is assumed and for which the applicable Cure Amount is paid shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court**.

C.      *Contracts and Leases Entered into After the Petition Date*

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or Reorganized Debtor in the ordinary course of business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

D.      *Indemnification and Reimbursement Obligations*

On and as of the Effective Date, any and all applicable indemnification provisions to which the Debtor is subject will be assumed and irrevocable and will survive the effectiveness of the Plan, and the New Operating Agreement will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's current and former managers, officers, and employees to the fullest extent permitted by law and at least to the same extent as set forth in the organizational documents of the Debtor as of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted. The Debtor or Reorganized Debtor, as applicable, shall not amend and/or restate its organizational documents before or after the Effective Date to terminate or materially adversely affect (1) the Reorganized Debtor's obligations referred to in the immediately preceding sentence or (2) the rights of such managers, officers, or employees referred to in the

immediately preceding sentence. Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be required to indemnify the Debtor's managers, officers, or employees for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtor's organizational documents, or other applicable agreements governing the Debtor's indemnification obligations.

E.    *Employee Benefits and Employment Agreements*

Subject to the Provisions of the Plan, all programs of the Debtor related to employee compensation and/or benefits shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date under the provisions of sections 365 and 1123 of the Bankruptcy Code. The Reorganized Debtor shall honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid under a Bankruptcy Court order.

All employment agreements by and among the Debtor and any member of its executive management team (as of the Effective Date) shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date under the provisions of sections 365 and 1123 of the Bankruptcy Code.

F.    *NCR Lease and NCR Lease Amendment*

If the Existing Equity Interest Holder votes its Class 5 Interests to accept the Plan, the Debtor will execute the NCR Lease Amendment prior to the Effective Date, which NCR Lease Amendment will increase the tonnage royalty due to North Central Resources for certain coal mined and sold from the Mine, as set forth in the NCR Lease Amendment.  The Debtor submits that the NCR Lease constitutes a real property conveyance from the Existing Equity Interest Holder to the Debtor and, as such, may not be subject to section 365 of the Bankruptcy Code.  To the extent the NCR Lease is subject to section 365 of the Bankruptcy Code, it shall be assumed by Reorganized Debtor pursuant to this Plan and section 365 of the Bankruptcy Code.  If the Existing Equity Interest Holder votes its Class 5 Interests to accept the Plan, such NCR Lease shall be assumed as amended by the NCR Lease Amendment, effective as of the Effective Date.

G.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease.

H.    *Reservation of Rights*

Nothing contained in the Plan, the Plan Supplement, nor the Schedules shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the

Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the "Treatment" sections in Article III hereof or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Distribution Date or as soon thereafter as is practicable. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day. Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made under Article VII hereof.

B.      *Delivery of Distributions*

1.      Delivery of Distributions

Other than as specifically set forth below, the Debtor or Reorganized Debtor shall make all distributions required to be distributed under this Plan.

2.      Distribution Record Date

At the close of business on the Distribution Record Date, the Claims Register shall be closed. Accordingly, the Debtor and Reorganized Debtor will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices and other documents only to those Holders of Allowed Claims who are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Debtor and the Reorganized Debtor shall be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the Claims Register, or their books and records, as of the close of business on the Distribution Record Date.

3.      Delivery of Distributions in General

Except as otherwise provided herein, the Debtor or the Reorganized Debtor, as applicable, shall make distributions to Holders of Allowed Claims, or in care of their authorized agents, as appropriate, at the address for each such Holder or agent as indicated on the Debtor's books and records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined in the discretion of the Debtor or Reorganized Debtor; provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the latest Proof of Claim Filed by such Holder under Bankruptcy Rule 3001 as of the Distribution Record Date.

4.     Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; provided, however that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

C.     *Manner of Payment*

At the option of the Debtor or Reorganized Debtor, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

D.     *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, the Interim DIP Order, or the Final DIP Order, and notwithstanding any documents that govern the Debtor's prepetition indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims, and (2) no Holder of a Claim shall be entitled to (a) interest accruing on or after the Petition Date on any such Claim or (b) interest at the contract default rate, each as applicable.

E.     *Setoffs and Recoupments*

Debtor or Reorganized Debtor, as applicable, or such Entity's designee, may, under section 553 of the Bankruptcy Code or other applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made under this Plan on account of such Allowed Claim any and all Claims, rights, and Causes of Action that Debtor or Reorganized Debtor or its successors may hold against the Holder of such Allowed Claim; provided, however that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by Debtor or Reorganized Debtor or its successor of any Claims, rights, or Causes of Action that Reorganized Debtor or its successor or assign may possess against such Holder.

F.     *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtor and Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtor and the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor and Reorganized Debtor reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child

26

support and other spousal awards, liens, and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Reorganized Debtor has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to any issuing or distribution party for payment of any such tax obligations.

The Reorganized Debtor may require, as a condition to receipt of a distribution, that the Holder of an Allowed Claim provide any information necessary to allow the distributing party to comply with any such withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority. If the Reorganized Debtor makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against Reorganized Debtor or its property.

G.    *Claims Paid or Payable by Third Parties*

      1.    <u>Claims Payable by Insurance</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable under one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.

      2.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS**

A.    *Allowance of Claims and Interests*

After the Effective Date, and unless otherwise expressly provided for in this Plan, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date.  All settled Claims approved prior to the Effective Date by a Final Order of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.    *Proofs of Claim*

On and after the Effective Date, except as otherwise provided in the Plan, all Allowed Claims shall be satisfied on the Effective Date (if such claims are due as of the Effective Date), or in the ordinary course of business of the Reorganized Debtor (if such claims are not yet due as of the Effective Date). The Debtor and the Reorganized Debtor, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to any Claims; provided, however that, consistent with section 502(a) of the Bankruptcy Code, any party in interest is permitted to object to any Proof of Claim that is Filed with the Bankruptcy Court. If the Debtor or Reorganized Debtor dispute any Claim, the Debtor or the Reorganized Debtor, as applicable, or any party in interest may object to any Claim (other than Claims expressly Allowed by the Plan) and request to have the validity or amount of any Claim adjudicated by the Bankruptcy Court.

C.    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority to (1) file, withdraw, or litigate to judgment, any objections to Claims or Equity Interests and (2) settle or compromise any Disputed Claim or Equity Interest without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Equity Interest, including the Causes of Action retained under the Plan.

D.    *Estimation of Claims and Equity Interests*

Before or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Equity Interest that is contingent or unliquidated under section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Equity Interest, including during the litigation of any objection to any Claim or Equity Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero ($0.00) dollars unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Equity Interest, that estimated amount shall constitute a maximum limitation on such Claim or Equity Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Equity Interest.

E.    *Adjustment to Claims Without Objection*

Any duplicate Claim or Equity Interest or any Claim or Equity Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged by the Reorganized Debtor without the Reorganized Debtor having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Equity Interest, and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed under section 502(d) of the Bankruptcy Code unless expressly Allowed under the Plan, and Holders of such Claims may not receive any distributions on account of such Claims and Equity Interests until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor.

G.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Equity Interest is a Disputed Claim or Equity Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest.

H.      *Distributions After Allowance*

To the extent that a Disputed Claim or Equity Interest ultimately becomes an Allowed Claim or Equity Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Equity Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Equity Interest becomes a Final Order, the Reorganized Debtor shall provide to the Holder of such Claim or Equity Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Equity Interest.

I.      *No Interest*

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with the terms of the Plan:

1.      this Plan and the Restructuring Documents shall be in form and substance reasonably acceptable to each of the Plan Sponsors;

2.      the Confirmation Date has occurred and the Confirmation Order is a Final Order;

3.      all government and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in this Plan have been obtained, are not subject to unfulfilled conditions, and are in full force and effect, and all applicable waiting periods

have expired without any action having been taken by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

4.      The Debtor and/or Reorganized Debtor, as applicable, shall have closed under the Equity Commitment Agreement, the Exit Facility, the New Operating Agreement and, if applicable, the NCR Lease Amendment; and

5.      The Debtor shall have received the New Equity Investment.

B.      *Waiver of Conditions*

The Debtor or the Reorganized Debtor, as applicable, with the express prior written consent of the DIP Lenders, may waive any of the conditions to the Effective Date set forth above at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court and without any formal action other than a proceeding to confirm the Plan.

**ARTICLE IX**

**RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS**

A.      *General*

Under section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved under this Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtor, the Estate, and any Holders of Claims and Equity Interests and is fair, equitable and reasonable.

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; provided, however, that nothing contained herein shall preclude any Person or Entity from exercising their rights under and consistent with the terms of this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan.

B.      *Release of Claims and Causes of Action*

1.      **Release by the Debtor and The Estate.**

**Under section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and**

valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor and the Reorganized Debtor, in their respective individual capacities and as debtor in possession, and on behalf of themselves and the Estate, including, without limitation, any successor to the Debtor or any Estate representative appointed or selected under section 1123(b)(3) of the Bankruptcy Code (collectively, the "Releasing Parties") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Releasing Parties) and their respective assets and properties (the "Release") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtor, the Chapter 11 Case, the marketing of any of the Debtor's assets, the Disclosure Statement, this Plan and the Restructuring Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan, (iii) the business or contractual arrangements between Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Restructuring Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Case, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Equity Interest of the Debtor or the Reorganized Debtor, and/or (vii) the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan that such Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, Debtor, the Estate, or the Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this Release shall not operate to waive, release or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction and/or (ii) the rights of such Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed under this Plan or assumed pursuant to Final Order of the Bankruptcy Court.

 The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Release. Notwithstanding the foregoing, nothing in this Article IX.B shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, unless otherwise expressly provided for in this Plan.

 Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Bankruptcy Rule 9019, of the Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that

the Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Release; (iii) in the best interests of the Debtor and its Estate; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

C.      *Discharge of Claims and Equity Interests*

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtor or any of its assets or properties, including any interest accrued on such Claims or Equity Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under this Plan on account of such Claims, Equity Interests or Causes of Action.

Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and the Estate shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (ii) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely without further notice or action; and (iii) all Entities shall be precluded from asserting against the Debtor, the Estate, the Reorganized Debtor, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or Equity Interests, whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

D.      *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity or Person for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of this Plan, the Disclosure Statement, the Restructuring Documents or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other postpetition act taken or omitted to be taken in connection with the restructuring of the Debtor, the approval of the Disclosure Statement or Confirmation or Consummation of this Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive, release or otherwise impair: (i) any Causes of Action expressly set forth in and preserved by this Plan or the Plan Supplement; (ii) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent

jurisdiction; (iii) any of the indebtedness or obligations of the Debtor and/or the Reorganized Debtor under this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under this Plan or assumed pursuant to Final Order of the Bankruptcy Court, (iv) the rights of any Entity or Person to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents executed and delivered under or in connection with this Plan or assumed under this Plan or assumed pursuant to Final Order of the Bankruptcy Court; and/or (v) any objections with respect to any Retained Professional's final fee application or Accrued Professional Compensation Claims in this Chapter 11 Case; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties under, or in connection with, the above-referenced documents, actions or inactions.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this Article IX.D shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, in each case unless otherwise expressly provided for in this Plan.

E.    *Preservation of Causes of Action*

1.    Maintenance of Causes of Action

Except as otherwise provided in this Article IX or elsewhere in this Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtor shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case; provided, however, that the foregoing shall not be deemed to include any other claims or Causes of Action (i) released under the Plan or (ii) exculpated under the Plan to the extent of any such exculpation. The Reorganized Debtor, as the successor-in-interest to the Debtor and the Estate, may, and shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Causes of Action, in each case solely to the extent of the Debtor's or the Estate's interest therein, without notice to or approval from the Bankruptcy Court.

2.    Preservation of All Causes of Action Not Expressly Settled or Released

The Debtor expressly reserves all Causes of Action for later adjudication by the Debtor or the Reorganized Debtor (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in this Plan, the Confirmation Order or any other Final Order. In addition, the Debtor and the Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

F.    *Injunction*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

G.    *Binding Nature of the Plan*

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTOR, THE REORGANIZED DEBTOR, ALL PARTIES IN INTEREST PROVIDED NOTICE OF THE PLAN, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTOR AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN, AFFIRMATIVELY VOTED TO REJECT THIS PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THIS PLAN.**

H.    *Protection Against Discriminatory Treatment*

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but

34

before the Debtor is granted a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

I.      *Integral Part of Plan*

Each of the provisions set forth in this Plan with respect to the settlement, release, discharge, exculpation, and injunction of, for or with respect to Claims and/or Causes of Action are an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

J.      *Preservation of Privilege and Defenses*

No action taken by the Debtor or Reorganized Debtor in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

## ARTICLE X

## RETENTION OF JURISDICTION

Under sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Equity Interest;

2.      Decide and resolve all matters related to the granting or denial, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; provided, however, that, from and after the Effective Date, the Reorganized Debtor shall pay Retained Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.      Resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to this Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (as applicable);

4.      Resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.      Ensure that distributions to Holders of Allowed Claims are accomplished under the provisions of this Plan;

6.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, provided, however that the Reorganized Debtor reserves the right to commence actions in all appropriate forums and jurisdictions;

7.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

9.      Hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future, except for those claims or Causes of Action (i) released under the Plan or (ii) exculpated under the Plan to the extent of any such exculpation;

10.     Issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan;

11.     Enforce the terms and conditions of this Plan, the Confirmation Order, and the Restructuring Documents;

12.     Resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, and any other provisions contained in Article IX hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13.     Enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.     Resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan; and

15.     Enter a final decree closing the Chapter 11 Case.

Notwithstanding the foregoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Article of the Plan, the provisions of this Article IX shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

# ARTICLE XI

# MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A.    *Modification of Plan*

Subject to the limitations contained in the Plan, the Debtor, with the written consent of the other Plan Sponsor, reserves the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules, (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (2) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved under section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation of Plan*

Subject to the conditions to the Effective Date, the Debtor, with the written consent of the other Plan Sponsor, reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if the Effective Date does not occur, then (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan, assumption of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void, and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against or any Equity Interests in the Debtor or any other Entity, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission of any sort by the Debtor or any other Entity.

# ARTICLE XII

# MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims and Equity Interests (irrespective of whether such Holders of Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including under Bankruptcy Rule 3020(e), 6004(g), and 7062.

B.      *Additional Documents*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or Reorganized Debtor, as applicable, and all Holders of Claims or Equity Interests receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.      *Payment of Statutory Fees; Post-Effective Date Fees and Expenses*

All fees due and payable under section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtor. On and after the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee. Except as otherwise provided in this Plan, the Debtor shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

The Reorganized Debtor shall pay the liabilities and charges that it incurs on or after the Effective Date for Retained Professionals' fees, disbursements, expenses, or related support services (including reasonable fees, costs and expenses incurred by Retained Professionals relating to the preparation of interim and final fee applications and obtaining Bankruptcy Court approval thereof) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court, including, without limitation, the fees, costs and expenses incurred by Retained Professionals in connection with the implementation, enforcement and Consummation of this Plan and the Restructuring Documents.

E.      *Conflicts*

In the event that a provision of the Restructuring Documents or the Disclosure Statement (including any and all exhibits and attachments thereto) conflicts with a provision of this Plan or the Confirmation Order, the provision of this Plan and the Confirmation Order (as applicable) shall govern and control to the extent of such conflict. In the event that a provision of this Plan conflicts with a provision of the Confirmation Order, the provision of the Confirmation Order shall govern and control to the extent of such conflict.

F.      *Successors and Assigns*

This Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all present and former Holders of Claims and Equity Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

G.      *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

H.      *Further Assurances*

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

I.      *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable under its terms.

J.      *Service of Documents*

Any notice, direction or other communication given to the Debtor or Reorganized Debtor regarding the matters contemplated by this Plan (each, a "**Notice**") must be in writing, sent by personal delivery, electronic mail, or courier and addressed as follows:

If to the Debtor or Reorganized Debtor:

**Century Mining, LLC**
Attn:  Mark J. Welch, CRO
7004 Buckhannon Road
P.O. Box 279
Volga, WV 26238
mwelch@morrisanderson.com

with a copy to:

**Campbell & Levine, LLC**
Attn:  Paul Cordaro
310 Grant Street, Suite 1700
Pittsburgh, PA 15219
pcordaro@camlev.com

If to White Knight II:

> **White Knight Specialty Funding II LLC**
> Attn:  Nimesh Patel
> 600 Steamboat Road, 3rd Floor
> Greenwich, CT 06830
> npatel@amcigroup.com

With a copy to:

> **McGuireWoods LLP**
> Attn:  Mark E. Freedlander and Frank J. Guadagnino
> Tower Two-Sixty
> 260 Forbes Avenue, Suite 1800
> Pittsburgh, PA 15222
> mfreedlander@mcguirewoods.com
> fguadagnino@mcguirewoods.com

If to INL:

> **ITC-NCR, LLC**
> Attn: Yoshitaka Kanemitsu
> 4600 J. Barry Ct., Suite 230
> Canonsburg, PA 15317
> yoshitaka.kanemitsu@itochucoal.com

With a copy to:

> **Thompson Hine LLP**
> Attn:  Jeremy M. Campana
> 3900 Key Center
> 127 Public Square, 3900
> Cleveland, OH 44114
> jeremy.campana@thompsonhine.com

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt, provided that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section. Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed. Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party. The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

K.   *Exemption from Transfer Taxes Under Section 1146(a) of the Bankruptcy Code*

Under section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, under or in connection with this Plan,

the Restructuring Documents to the extent consummated substantially in connection with this Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and the Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under this Plan or the Restructuring Documents, (ii) the issuance and distribution of the New Equity Interests, and (iii) the maintenance or creation of security interests or any Lien as contemplated by this Plan or the Restructuring Documents.

L.      *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a Restructuring Document or an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of West Virginia, without giving effect to the principles of conflicts of law of such jurisdiction.

M.      *Tax Reporting and Compliance*

The Reorganized Debtor is hereby authorized, on behalf of the Debtor, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

N.      *Schedules*

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated herein and are a part of this Plan as if set forth in full herein.

O.      *No Strict Construction*

This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Debtor, the DIP Lenders, and their respective professionals. Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, the Exhibits and the Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentem*" or other rule of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, the Exhibits or the Plan Schedules, or the documents ancillary and related thereto.

P.      *Entire Agreement*

Except as otherwise provided herein or therein, this Plan and the Restructuring Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan and the Restructuring Documents.

Q.      *Closing of Chapter 11 Case*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

R.      *2002 Notice Parties*

After the Effective Date, the Debtor and the Reorganized Debtor, as applicable, are authorized to limit the list of Entities receiving documents under Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Confirmation Hearing to receive documents under Bankruptcy Rule 2002.

S.      *Dissolution of Committee*

On and as of the Effective Date, to the extent one has been formed and appointed, the Committee shall dissolve automatically and its members shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Case. The Reorganized Debtor shall not be responsible for paying any fees, costs, or expenses incurred by the members, professionals, or advisors to the Committee after the Effective Date, except for such fees, costs, or expenses incurred (and allowed under section 330 of the Bankruptcy Code) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to the terms and conditions of this Plan; provided, however, that after the Effective Date, any Retained Professional retained by the Committee shall have the right to file and prosecute Accrued Professional Compensation Claims, including any appeal of any Final Order relating thereto.

T.      *Section 1125(e) Good Faith Compliance*

The Debtor, the Reorganized Debtor, and each of their respective Representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

*[Remainder of this Page was Intentionally Left Blank]*

Dated:   January 16, 2025

| | |
|---|---|
| **CAMPBELL & LEVINE, LLC**<br><br>By: _/s/ David B. Salzman_<br>David B. Salzman, Esq.<br>PA I.D. No. 39360<br>WV I.D. No. 9235<br>Paul J. Cordaro, Esq.<br>Kathryn L. Harrison, Esq.<br>310 Grant St., Suite 1700<br>Pittsburgh, PA 15219<br>Tel:  412-261-0310<br>Fax:  412-261-5066<br>dsalzman@camlev.com<br>pcordaro@camlev.com<br>kharrison@camlev.com<br>*Counsel to the Debtor*<br><br>-and-<br><br>**SUPPLE LAW OFFICE, PLLC**<br>Joe M. Supple, Esq.<br>WV I.D. No. 8013<br>801 Viand Street<br>Point Pleasant, WV 25550<br>Tel: 304-675-6249<br>Fax: 304-675-4372<br>joe.supple@supplelawoffice.com<br>*Local Counsel to the Debtor* | **McGUIREWOODS LLP**<br><br>Mark E. Freedlander, Esq.<br>Frank J. Guadagnino, Esq.<br>Tower Two-Sixty<br>260 Forbes Avenue, Suite 1800<br>Pittsburgh, PA 15222<br>Tel: 412-667-6000<br>Fax: 412-667-6050<br>mfreedlander@mcguirewoods.com<br>fguadagnino@mcguirewoods.com<br>*Counsel to White Knight II*<br><br>-and-<br><br>**PHILLIPS, GARDILL, KAISWER & ALTMEYER, PLLC**<br>Denise Knouse-Snyder, Esq.<br>WV Bar I.D. No. 7073<br>61 14th Street<br>Wheeling, WV 26003<br>Tel:  304-232-6810<br>denisesnyder@pgka.com<br>*Local Counsel to White Knight II* |
| **THOMPSON HINE LLP**<br>Jeremy M. Campana, Esq.<br>3900 Key Center<br>127 Public Square, 3900<br>Cleveland, OH 44114<br>Tel:  216-566-5936<br>jeremy.campana@thompsonhine.com<br>*Counsel to INL*<br><br>-and-<br><br>**FROST BROWN TODD LLC**<br>Jared M. Tully, Esq.<br>WV Bar I.D. No. 9444<br>500 Virginia Street East, Suite 1100<br>Charleston, WV 25301<br>Tel:  304-345-0111<br>jtully@fbtlaw.com<br>*Local Counsel to INL* | |